## BAILEY v. GIFFORD SAND & GRAVEL CO.

### No. 4274.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1933.

For former opinion, see 140 So. 240.

Allen V. Hundley, of Alexandria, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MILLS, J.

The original judgment in this case is conclusive of all matters of fact and law which were or could have been considered at the time of trial. The correctness of the judgment cannot be questioned on an application to modify the decree when there is no plea of error, fraud, or misrepresentation. O'Donnell v. Fortuna Oil Co., 10 La. App. 601, 120 So. 789.

There being no such plea in this case, the only question presented by the rule to modify the original judgment by decreeing it satisfied is whether or not the condition of the injured employee has improved to such a degree as to justify the requested modification. Section 20

of Workmen's Compensation Act (Act No. 20 of 1914 as amended by Act No. 85 of 1926).

The testimony at the original trial, held June 18, 1926, some six months after the injury, and the opinion originally rendered, pictured the plaintiff, now defendant in this rule, as so weak he could hardly stand, walking with a pronounced limp in his right leg, having a drooping right shoulder, a weakened grip in his right hand, in fact a 25 per cent, loss of function in his entire right side. He had almost completely lost his hearing in the left ear, suffered almost constant headaches and dizziness, loss of sleep, loss of memory. He was at all times nervous and irritable. The only work he could do was to occasionally take in a little stove wood for his wife.

He had a hole in his head ⅞ of an inch in diameter and 1⅛ inches long, as shown by the X-ray. He was thoroughly examined by three physicians who testified for him. Dr. Cassity found his whole right side partially paralyzed, and thought he would never be able to stand hard work.

Dr. Sanderson found, with other symptoms, that his knee jerk was exaggerated in both legs. He pronounced his injuries permanent and the patient unable to do manual labor.

Dr. W. S. Kerlin found him afflicted with paresis or partial paralysis of the right side; that he was unable to do any work, absolutely incapacitated; that his disability was mental as well as physical; that his mentality was certainly impaired.

Does the testimony taken at the trial of the rule November 10, 1931, show any improvement over these conditions?

An X-ray taken by Dr. P. K. Rand shows the bone to have regenerated and grown over, completely filling the hole in the head. After a careful and testing examination, this physician found no suggestion of either motor or sensory disturbances; no atrophy which would necessarily follow any paralysis; no loss of function in either hand, both being equally calloused from labor; no loss of function in any of the limbs. While he made no special examination of the ears, the subject appeared to hear all right and made no complaint of deafness. His reflexes were normal. In concluding, he pronounced him a robust individual, fully able to work. As to his mental condition, he found no nervousness; his conversation concerning his accident and condition indicated him to be of normal mentality. Bailey did complain of headaches, and dizziness, which the doctor characterized as purely subjective symptoms.

Dr. R. E. McGill, the only physician testifying for Bailey, applied no tests, took no X-rays. When asked if he examined the subject, he answered, "Well, I questioned him." The only objective symptom of injury that he could find was the indentation over

the canal of the left ear. He agrees with Dr. Rand that the X-ray taken by the latter shows that nature has entirely closed this hole in the head. He found the hands calloused as testified by Dr. Rand, and, like Dr. Rand, found no evidence of paralysis. Basing his conclusions upon the symptoms of nervousness, loss of memory, headache, lack of sustained effort recited to him by Bailey and his family, he finds that they indicate a severe brain injury. Dr. McGill thinks the defendant in rule capable of working where he is his own boss, but does not consider him able to do manual labor by the day where he would be required to work steadily.

The evidence shows Bailey to be both a carpenter and a mechanic and not dependent on simple manual labor for a livelihood.

We do not find Dr. McGill's testimony contradictory of that of Dr. Rand except in its conclusions, which are admittedly based on subjective symptoms, for whose existence he depends upon the statement of Bailey and his family.

As to actual work done by Bailey, the evidence shows that he was employed as janitor at the Forest Hill High School from February 1 to September 1, 1931, at a salary of $75 per month; that he was helped in the work by his 12 year old boy who was attending the school; that during the sessions his work required him to be on the job from 6:30 a. m. to 5:30 p. m.; that it consisted of sweeping out two buildings of about fifteen rooms in all, keeping coal in the furnace, doing odd repair work, and generally performing the duties of a janitor. The principal of the school states that his work was fairly satisfactory, but that, when the new session was about to open up around September 1st, he seemed to have lost interest in the job; that when told he would, in addition to other work, take care of a new gymnasium and auditorium, he said it was more than he could do, and voluntarily resigned. Counsel for the gravel company attach much significance to the fact that this resignation about September 1st was coincident with a letter mailed August 28th requesting Bailey to report for further medical examination. Bailey claims, however, that his resignation preceded the receipt of this letter.

Mr. W. S. Campbell, the principal of the high school, says that Bailey seemed able to do the work if he wanted to; that he did not complain of any physical disability, seeming normal with no more peculiarities than the usual person; that he did complain at times of headaches.

During the period of his disability, though receiving only $38.20 net per month compensation, Bailey accumulated over $1,100, with which, doing some of the work himself, he built a house which yields him $8 per month rent. He owns a small truck farm which he rents on shares. He helps work it at times, doing both hoeing and plowing. He owns his own home. Whenever he could get them, he did odd carpenter jobs around the town. He owned an autotruck which he operated for hire, hauling lumber, ties, bricks, etc. He bought an automobile, but turned it back after four months. He rented and operated with one helper a garage and filling station for some time. He has been seen working around another garage operated by Mr. Perkins.

He contracted with Lyman H. Mizzell to build a garage in Forest Hill. The building was erected, accepted, and paid for. He contracted with Mizzell also to tear down, move, and rebuild another structure. Bailey wriggled out of this contract on the plea that he had taken the work too cheaply. Mizzell does say that Bailey is not reliable mentally and that he did not complete either job according to agreement; that another time, in dealing with him, he would insist on a written contract. He says that Bailey is strong and healthy physically.

W. S. Savage saw Bailey doing regular repair work at Perkins' garage, but does not think him capable of steady work.

L. E. Reel, general superintendent of the Gifford, Hill Company in Louisiana, successors to the Gifford Sand & Gravel. Company, states that Bailey appeared to him to be strong and healthy; that he applied to him several times for work but was refused because of the pending suit. Jobs are scarce at Forest Hill at the present time.

Bailey and his witnesses do not materially contradict any of this testimony. He claims that the principal fussed at him all the time about his janitor work; that he resigned because there was more work than he could do. He admits he operates the truck, claiming two negroes run it and do all the work. He admits running the garage with hired help, and admits ownership and rental of the truck farm, but denies that he works it. He admits doing the carpenter work for Mr. Mizzell, admits working some at Perkins' garage without pay, and admits building and renting the tenant house, without explaining the source of the $1,100.

Perkins says he helped him about his garage without pay or regular employment.

I. O. Butler was the helper in the garage and filling station that Bailey operated. He testifies that Bailey did some unsatisfactory work.

Bailey's 12 year old boy testifies that he did nearly half of the janitor work.

Bailey complains that he cannot sleep at night; that his head bothers him; that his memory and thinking are not as good as

formerly; and says he tries to work, without much success.

His sister, Mrs. Mounce, testifies that he is irritable, impatient, and unreliable as to memory.

There is not a word in the testimony of any of his witnesses on the hearing of the rule 'as to the existence of any physical incapacity; nothing about a limp of the right leg, paralysis of the right side, vertigo, or drooping right shoulder. His entire complaint is concerned with mental and nervous troubles.

 The burden of establishing improvement is upon the plaintiff in the rule. A comparison of the man revealed by the above testimony with the limping, drooping physical wreck pictured by the original testimony, and judgment leads to no other conclusion except that this burden is successfully discharged. To grant the relief prayed for, it is not necessary to find that Bailey has entirely recovered. A recovery sufficient to reduce the disability from total to partial is sufficient. Though some mental trouble may still remain, the physical disability has completely disappeared. Considering the many activities of defendant in rule, his capacity for saving and for planning, his mental trouble does not cause total disability.

We therefore find that the compensation allowed should be reduced from a period not to exceed four hundred weeks to one not to exceed three hundred weeks; that three hundred weeks' compensation has already been paid; and that our former opinion and judgment on the rule is erroneous and is hereby revoked and annulled.

The judgment of the lower court making the rule absolute, decreeing the original judgment satisfied, and discharging plaintiff in the rule from any further payments under the original judgment, is reinstated and affirmed.